FILED
2012 Sep-11  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JARRETT D. GARDNER, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:11-CV-2461-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The plaintiff, Jarrett D. Gardner, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB").  Mr. Gardner timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Garner was twenty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education, including some

special education classes.   (Tr. at 138.)   His past work experiences include

employment as a janitor and fast food worker. (Tr. at 32, 134.) Mr. Garner claims that

he became disabled on December 2, 2005, (Tr. at 15), due to hearing loss in the right

ear, a sleep disorder, hypertension, and hematochezia. (Tr. at 17-18.)

When evaluating the disability of individuals over the age of eighteen, the

regulations prescribe a five-step sequential evaluation process.   *See* 20 C.F.R. §§

404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The

first step requires a determination of whether the claimant is "doing substantial

gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the

claimant is not disabled and the evaluation stops.   *Id*.   If he or she is not, the

Commissioner next considers the effect of all of the physical and mental impairments

combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments

must be severe and must meet the durational requirements before a claimant will be

found to be disabled. *Id*.  The decision depends on the medical evidence in the record.

*See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments

are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Garner meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 17.)  He further determined that Mr. Garner  has not engaged in substantial gainful activity since the alleged onset of his

disability. (*Id.*) According to the ALJ, Plaintiff's sensorineural hearing loss in the right ear and sleep disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 19.) The ALJ determined that Mr. Garner "has the residual functional capacity to perform a full range of work at all exertion levels but with the following nonextertional limitations: the claimant should avoid commercial driving, moving machinery, or work at open/unprotected heights." (*Id.*) The ALJ also noted that Mr. Garner "is unable to climb ladders or other climbing devices." (*Id.*)

According to the ALJ, Mr. Garner is able to perform his past relevant work as a fast food worker, but not as a janitor because janitorial work may require him to climb ladders. (*Id.* at 22.) Even though Plaintiff likely cannot work as a janitor, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as hand packager, laundry checker, and kitchen helper. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 2, 2005 through the date of this decision." (*Id.*)

II.     Standard of Review.

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Mr. Garner alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes that the ALJ failed to properly consider the treating physician's opinion when determining that he did not have a disability. (Doc. 8 at 6.) Second, Plaintiff contends that the ALJ improperly concluded that hypertension and hematochezia, when considered in combination, were not severe impairments. (Doc. 8 at 9.) Lastly, Plaintiff feels that the ALJ erred by not obtaining a medical expert to review the record and determine whether his impairments were medically equivalent to a listed impairment. (Doc. 8 at 10.)

A.    Treating Physician's Opinion

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Hodnett, his treating physician.  (Doc. 8 at 6.)  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the

contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  In his decision, the ALJ points out that he gave "little weight" to the opinions of Dr. Hodnett (Tr. at 21), but this was not improper if there is substantial evidence in the record as a whole to support the Commissioner's finding of good cause to discount Dr. Hodnett's opinion.

        "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). When determining the weight to be afforded to a medical opinion, the ALJ must also consider, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d),

416.927(d).

In this case, the ALJ articulated "good cause" for not accepting Dr. Hodnett's conclusions, including (1) that Dr. Hodnett's assessment "is inconsistent with other substantive evidence of record," and (2) that Dr. Hodnett's treatment notes do not support his opinion. (Tr. at 21.)

The record supports the ALJ's conclusion that Dr. Hodnett's assessment was inconsistent with other substantive evidence of record. Plaintiff saw another physician, Dr. Norwood, whose evaluation differs from that of Dr. Hodnett. Dr. Norwood is a specialist and performed a comprehensive neurological examination on Plaintiff. (Tr. at 274.)  Dr. Norwood deemed that Plaintiff may have narcolepsy but did not feel that that condition would prevent him from doing work-related activities such as "sitting, standing, walking, lifting, carrying, [and] handling objects." (Tr. at 276.) Unlike Dr. Hodnett, Dr. Norwood supported his findings by noting, among other things, that Plaintiff could "squat and rise without assistance," had normal strength in the arms and legs, and "can hear and understand a normal conversation." (*Id.*) Furthermore, the ALJ considered that Plaintiff reported to Dr. Norwood that he had not been taking medicine for his conditions.[1] (Tr. at 21, 275.) In the Eleventh

---

[1] It does not appear that Plaintiff had been prescribed any medications for his narcolepsy.

Circuit, a claim is considered suspect if the plaintiff has not been prescribed any medication to relieve the alleged disabling conditions. *See Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984). Thus, the ALJ properly concluded that Dr. Hodnett's opinion was inconsistent with the evidence of record.

The ALJ also correctly discounted Dr. Hodnett's opinion because his treatment notes do not support the functional limitations he noted on a Physical Capacities Evaluation ("PCE") and a Fatigue and Weakness Form. (Tr. at 21.)  These forms were only check box forms, which provide little to no narrative insight into the reasons behind the conclusions. The Eleventh Circuit has held check box forms to have little probative value. *See Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting an opinion from a physician who merely checked boxes on a form without providing any explanation for his conclusions). For example, Dr. Hodnett filled out a form, stating that Plaintiff could sit for one hour a day or could stand/walk for two hours a day, but there is nothing in Dr. Hodnett's treatment notes to support that conclusion. (Tr. at 263.)

For the reasons stated above, this Court finds that the ALJ had good cause to discount the opinion of Plaintiff's treating physician, Dr. Hodnett.

B.      Evaluation of Plaintiff's Hypertension and Hematochezia

Additionally, Mr. Garner alleges that the ALJ did not properly factor Plaintiff's hypertension and hematochezia into his RFC assessment. When evaluating disability, the ALJ must consider the combined effects of all of the claimant's impairments, because while an impairment considered alone may not be disabling, the combined effects of the impairments may be enough to render the claimant disabled. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).

On review of this issue, the Eleventh Circuit has previously held that when the ALJ states in his opinion that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments*. . . ,'" it is "clear that the ALJ considered the combination issue." *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original). In this case, the ALJ made a similar statement in his opinion: "[t]he claimant does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments. . ." (Tr. at 19.)   Thus, Plaintiff's contention is without merit.

C.     Need for Medical Expert Testimony

Mr. Garner contends that the ALJ failed to fully develop the record by not obtaining a medical expert ("ME") to determine whether his impairments were

medically equivalent to a listed impairment.  Plaintiff is correct that the ALJ has a duty to fully and fairly develop the record, *see Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997), but this Court cannot agree that the ALJ failed in his duties by not obtaining an ME.  Federal regulations provide that an ALJ "***may*** ask for or consider the opinion of a medical . . . expert." 20 C.F.R. § 404.1529(b) (emphasis added).  However, an ALJ is not required to seek an independent ME before making his or her determination.   *Wilson v. Apfel,* 179 F. 3d. 1276, 1278 (11th Cir. 1999). In fact, in *Wilson*, the Eleventh Circuit deemed that the record, which contained the testimony of several physicians who had treated the plaintiff, was sufficiently complete, making obtaining an ME unnecessary. *Id.*

In this case, the record contained the medical records from at least three physicians who had evaluated Mr. Garner since December 2, 2005. (Tr. at 218, 230-32, 274-79.) Per *Wilson*, the record was sufficient for the ALJ to make a determination without obtaining an ME.  Thus, this Court finds that the ALJ did not err in failing to obtain an additional ME.[2]

IV.    Conclusion.

---

[2]It appears that Plaintiff feels that the record was insufficient because it also contained an RFC assessment completed by a nurse instead of an M.D. (Doc. 8 at 10.)  However, there is no requirement that every item in the record contain testimony from an acceptable medical source. *See* 20 C.F.R. § 404.1513(d). Plaintiff has failed to show why additional evidence was necessary.

Upon review of the administrative record, and considering all of Mr. Garner's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 11th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704